Randy M. Rodriguez, Esq., Cal. Bar No. 310328
LAW OFFICE OF RANDY RODRIGUEZ
1605 W Olympic Blvd
Los Angeles, CA 90015
Tel: (818) 568-7321
Attorney for Petitioner
Barbara Perez De Algutria

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

BARBARA PEREZ DE ALGUTRIA, A# 095-267-881

Petitioner,

v.

JOSHUA JOHNSON, Warden,
Adelanto ICE Processing Center;
JAIME RIOS, Director, Los Angeles
Field Office, U.S. Immigration and Customs
Enforcement;
DAVID VENTURELLA, Acting Director, U.S.
Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary, U.S. Department
of Homeland Security;
TODD BLANCHE, Attorney General of the
United States,

Respondents.

---

# PETITION FOR WRIT OF HABEAS CORPUS

**(28 U.S.C. § 2241)**

Petitioner Barbara Perez De Algutria, by and through undersigned counsel, respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and in support states as follows:

## I. INTRODUCTION

1. Petitioner is a 21-year lawful permanent resident ("LPR") of the United States, admitted for permanent residence on September 15, 2004. She is married to a lawful permanent resident and is the parent of a minor United States citizen son who has been diagnosed with autism and requires ongoing therapeutic and educational support.

2. On September 6, 2026, Petitioner returned to the United States following a trip to Colombia which she took on August 23, 2026. Rather than being permitted to resume her residence, Petitioner was detained by U.S. Customs and Border Protection and classified as an "arriving alien" seeking admission under INA § 101(a)(13)(C), based on an allegation by the Department of Homeland Security ("DHS") that she was convicted of criminal offenses in 2008 and 2014, more than a decade before her return. DHS has since issued a Notice to Appear charging Petitioner with inadmissibility under INA § 212(a)(2)(A)(i)(I), for conviction of, or admission to, a crime involving moral turpitude.

3. Petitioner has been detained without an individualized bond hearing since September 6, 2026, and remains held at the Adelanto ICE Processing Center in Adelanto, California, within this district. Petitioner's continued detention, without any individualized assessment of flight risk or danger, and without adequate evidentiary basis for her classification as an applicant for admission, violates the Due Process Clause of the Fifth Amendment and exceeds Respondents' statutory authority.

4. Petitioner brings this petition to challenge (a) the constitutionality of her continued mandatory detention without an individualized bond hearing, and (b) in the alternative, the sufficiency of the evidentiary basis for her classification as an alien "seeking admission" under INA § 101(a)(13)(C)(v).

## II. JURISDICTION

5. This Court has jurisdiction under 28 U.S.C. § 2241, which authorizes federal courts to grant habeas relief to persons held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

6. This Court has jurisdiction to review constitutional and statutory challenges to the legality of immigration detention, including challenges to the process by which an LPR is classified as an applicant for admission and subjected to detention under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). See Demore v.

Kim, 538 U.S. 510 (2003); Zadvydas v. Davis, 533 U.S. 678 (2001); Jennings v. Rodriguez, 583 U.S. 281 (2018).

7. This petition does not seek review of a final order of removal and is not barred by INA § 242(a)(5) or § 242(b)(9), 8 U.S.C. § 1252(a)(5), (b)(9), as no final order of removal has been entered and Petitioner challenges only the legality of her ongoing detention, not the merits of a removal order.

## III. VENUE

8. Venue is proper in this district under 28 U.S.C. § 1391(e) and the immediate-custodian rule, because Petitioner is confined at the Adelanto ICE Processing Center, located in Adelanto, San Bernardino County, California, within the Eastern Division of the Central District of California. See Rumsfeld v. Padilla, 542 U.S. 426, 434-35, 442-43 (2004).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Section 2241 does not impose a statutory exhaustion requirement. Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006). The Ninth Circuit requires exhaustion only "as a prudential matter," and that requirement is not jurisdictional and may be waived. Id.; Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004).

10. Waiver of prudential exhaustion is appropriate where, among other circumstances, administrative remedies would be futile, the issue presented is a purely legal one that does not call for the exercise of administrative discretion or expertise, or the petitioner would suffer irreparable harm absent immediate judicial review. Laing, 370 F.3d at 1000; Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017).

11. As to Claim Three, no administrative mechanism exists through which Petitioner could challenge her classification as an arriving alien before an immigration judge. The "not properly included" determination recognized in Matter of Joseph, 22 I&N Dec. 799 (BIA 1999), derives from 8 C.F.R. § 1003.19(h)(2)(ii), which permits a detained noncitizen to seek a determination that she is not properly included only within the categories described in 8 C.F.R. § 1003.19(h)(2)(i)(C), (D), and (E). The regulation extends no comparable procedure to arriving aliens, who are addressed separately in 8 C.F.R. § 1003.19(h)(2)(i)(B). Petitioner's only conceivable avenue would be to ask an immigration judge to assume jurisdiction over her custody on the theory that she is not properly classified as an arriving alien, a request immigration judges routinely reject on the ground that they lack custody jurisdiction over arriving aliens. See Matter of Oseiwusu, 22 I&N Dec. 19 (BIA 1998); 62 Fed. Reg. 10,312, 10,361 (1997) (arriving aliens generally may not avail themselves of the administrative custody-

review process). Requiring Petitioner to pursue a remedy that the regulations do not provide, before permitting her to seek relief in this Court on Claim Three, would be futile.

12. Waiver is independently warranted because the questions presented by Claim Three, namely whether Respondents have carried their burden under INA § 101(a)(13)(C) on the existing record, including their burden to establish that each conviction they allege is an offense identified in INA § 212(a)(2) and that no exception to inadmissibility under INA § 212(a)(2)(A)(ii) applies, are legal questions of statutory interpretation subject to de novo review in any forum. They do not turn on fact-finding, discretionary judgment, or specialized expertise that an immigration judge is better positioned than this Court to supply. See Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (prudential exhaustion may be required where, among other things, agency expertise is necessary to generate a proper record and reach a proper decision).

13. Waiver is further warranted because Petitioner would suffer irreparable harm from the delay inherent in pursuing an administrative hearing of uncertain availability, followed by potential appeal to the Board of Immigration Appeals, before this Court would consider her claims. That delay directly and ongoingly harms Petitioner's minor son, who has been diagnosed with autism and has

therapeutic and educational needs that Petitioner has historically helped coordinate. Every week of delay compounds harm that cannot later be undone.

14. As to Claims One and Two, no administrative remedy exists to exhaust in the first instance. Once an alien is classified as an arriving alien, 8 C.F.R. § 1003.19(h)(2)(i)(B) categorically deprives the immigration judge of jurisdiction to redetermine that alien's custody or conduct an individualized bond hearing. Seeking such relief from the immigration judge would therefore be futile as a matter of regulation, not merely as a matter of practice. Petitioner's only administrative avenue for release — discretionary parole under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5)(A) — lies with DHS, not with an immigration judge, and does not constitute an adequate or exhaustible remedy for the constitutional violations alleged in Claims One and Two.

15. For these reasons, Petitioner respectfully submits that this Court may and should proceed directly to the merits of this petition without requiring Petitioner to first seek custody review before an immigration judge.

## V. PARTIES

16. Petitioner Barbara Perez De Algutria (A# 095-267-881) is a native and citizen of Mexico and a lawful permanent resident of the United States. She is currently detained at the Adelanto ICE Processing Center.

17. Respondent Joshua Johnson is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian. He is sued in his official capacity.

18. Respondent Jaime Rios is the Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"), and is responsible for the custody and detention of Petitioner. He is sued in his official capacity.

19. Respondent David Venturella is the Acting Director of ICE and is sued in his official capacity.

20. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity.

21. Respondent Todd Blanche is the Attorney General of the United States. He oversees the Executive Office for Immigration Review, including the immigration courts and the Board of Immigration Appeals, which administer the custody redetermination regulations at issue in this petition. See 8 U.S.C. § 1103(g). He is sued in his official capacity.

## VI. STATEMENT OF FACTS

22. Petitioner was admitted to the United States as a lawful permanent resident on September 15, 2004.

23. DHS alleges that on September 23, 2008, Petitioner was convicted of a violation of California Penal Code § 470(d) (forgery).

24. DHS further alleges that on June 2, 2014, Petitioner was convicted of a violation of California Welfare and Institutions Code § 10980(c)(2), arising from a loss amount of approximately $3,000.

25. Since her admission as a lawful permanent resident in 2004, Petitioner has traveled abroad and returned to the United States on multiple occasions, including trips from April 14, 2022 to May 1, 2022; February 5, 2023 to March 2, 2023; and January 6, 2024 to February 10, 2024, all of which postdate the 2008 and 2014 convictions DHS alleges. On each such occasion, Petitioner was inspected at a port of entry and readmitted as a returning lawful permanent resident without incident. At no time prior to September 6, 2026, did DHS treat Petitioner as an applicant for admission, charge her with inadmissibility, or otherwise indicate that the 2008 or 2014 convictions it now alleges rendered her inadmissible. Most recently, in March 2026, approximately six months before her detention, Petitioner's Permanent Resident Card (Form I-551) was renewed. The renewal was approved without any finding that the alleged 2008 or 2014 convictions affected her status, and without the issuance of a Notice to Appear or any other adverse action.

26. Petitioner is married to Robinson Gonzalez Payan, a lawful permanent resident, and is the mother of a 13-year-old son, Christian Alexander Gonzalez, who is a United States citizen and has been diagnosed with autism.

27. On or about September 6, 2026, Petitioner returned from a trip abroad to her husband's home country of Colombia. She sought to return to the United States. Upon her arrival, CBP officers detained her and classified her as an alien "seeking admission" under INA § 101(a)(13)(C), relying on the 2008 and 2014 convictions DHS alleges.

28. Petitioner has been held in DHS custody continuously since September 6, 2026, and remains detained at the Adelanto ICE Processing Center as of the filing of this petition.

29. DHS has since issued a Notice to Appear charging Petitioner with inadmissibility under INA § 212(a)(2)(A)(i)(I).

30. DHS charges Petitioner as an arriving alien within the meaning of INA § 101(a)(13)(C), and on that basis takes the position that she is subject to mandatory detention under INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A), and is not entitled to an individualized bond hearing before an immigration judge.

31. Petitioner has not been afforded an individualized bond hearing before an immigration judge to assess her flight risk or danger to the community, and, for

the reasons set forth in Part IV above, no administrative avenue exists through which she could obtain one.

32. Petitioner's detention has disrupted her ability to participate in her son's ongoing therapeutic and educational needs, which she has historically coordinated, including his therapy appointments, IEP meetings, and medical care.

//

//

## VII. CLAIMS FOR RELIEF

### CLAIM ONE: Continued Detention Without an Individualized Bond Hearing Violates the Due Process Clause of the Fifth Amendment

33. Petitioner realleges and incorporates by reference each of the foregoing paragraphs.

34. Lawful permanent residents, including those processed as applicants for admission upon return from travel abroad, retain due process protections under the Fifth Amendment. Landon v. Plasencia, 459 U.S. 21, 32-34 (1982).

35. Petitioner's status is not merely a favorable equity; it removes her from the category of noncitizen to whom the government's power over admission is at its most unreviewable. The plenary power doctrine, under which the government's authority approaches unreviewable discretion, applies with full force to noncitizens

seeking initial entry, who have not previously been admitted and accordingly have no liberty interest at the threshold for the Constitution to protect. United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950); Shaughnessy v. Mezei, 345 U.S. 206 (1953). Petitioner is not such a person: she holds a valid, unrevoked grant of lawful permanent resident status conferred in 2004 and renewed in 2026.

36. A lawful permanent resident returning from a temporary trip abroad is not subject to the historical "entry fiction" that permitted the government to treat a returning alien as though she stood at the threshold of initial entry. Kwong Hai Chew v. Colding, 344 U.S. 590, 596-98 (1953) (for purposes of a returning lawful permanent resident's constitutional right to due process, the Court "assimilate[d] [his] status to that of an alien continuously residing and physically present in the United States"). The statutory exceptions in INA § 101(a)(13)(C) accordingly should be construed narrowly against that constitutional backdrop, and the government's evidentiary burden to invoke them should be applied with that presumption in mind.

37. Petitioner's lawful permanent resident status, moreover, is a continuing legal status that remains in effect until lawfully terminated by a final order of removal, a finding of abandonment, or rescission. INA § 101(a)(20), 8 U.S.C. § 1101(a)(20); 8 C.F.R. § 1001.1(p). Nothing has terminated that status here. DHS's decision to process Petitioner as an arriving alien under INA § 101(a)(13)(C) is a

mechanism for adjudicating removability; it is not itself an adjudication that her lawful permanent resident status has ended, and it should not be treated as though it were for purposes of the process due to her.

38. Blanche v. Lau, 609 U.S. ___, No. 25-429 (June 23, 2026), addressed only whether a border officer must have clear and convincing evidence before treating a returning resident as an applicant for admission, and whether the charging determination in removal proceedings could rest on later-acquired evidence; it did not address, and did not foreclose, constitutional challenges to the adequacy of process afforded before or during detention. Id., slip op. at 5-9. Indeed, the majority expressly declined to decide whether the government bears any burden at all to establish that a returning lawful permanent resident is seeking admission, or whether some standard of proof short of clear and convincing evidence applies at the border. Id., slip op. at 7 n.2. The result is that Petitioner, a lawful permanent resident of twenty-one years, is being held in mandatory detention on the strength of a border determination made under no defined evidentiary standard. Whatever the statute permits at the port of entry, the Due Process Clause does not permit the government to deprive a lawful permanent resident of her liberty indefinitely on that basis without any opportunity for an individualized hearing.

39. The dissent in Lau identified precisely this danger. Justice Jackson, joined by Justices Sotomayor and Kagan, warned that the decision hands the government "a massive blank check" to return a lawful permanent resident to the status of one seeking admission on reentry, without initial proof, and to leave her in immigration limbo. Id. (Jackson, J., dissenting). Whatever latitude the majority affords a border officer in the first instance, nothing in Lau authorizes the indefinite mandatory detention of a twenty-one-year resident, whose status was renewed as recently as March 2026, and whose alleged convictions are more than a decade old, without any individualized process.

40. Petitioners faces prolonged detention without an individualized determination of flight risk or dangerousness, notwithstanding her twenty-one years of continuous residence, close family ties to a lawful permanent resident spouse and a United States citizen son with autism, and the absence of any alleged criminal conduct in the more than twelve years since 2014, is not narrowly tailored to any legitimate governmental interest and violates due process.

41. Because 8 C.F.R. § 1003.19(h)(2)(i)(B) deprives the immigration judge of jurisdiction to redetermine Petitioner's custody so long as she remains classified as an arriving alien, Respondents' failure to afford Petitioner any individualized bond hearing exceeds statutory authority under 8 U.S.C. § 1225(b)(2)(A) and violates due process.

42. The consequence of Petitioner's classification as an arriving alien is that she receives categorically fewer procedural protections than a similarly situated noncitizen apprehended in the interior without any lawful status. A noncitizen placed in proceedings under INA § 236(a), 8 U.S.C. § 1226(a), is ordinarily entitled to an individualized bond hearing before an immigration judge unless she falls within the mandatory detention provisions of INA § 236(c). Petitioner, despite twenty-one years of lawful permanent residence and undisputed close family ties to a lawful permanent resident spouse and a United States citizen son with autism, has been afforded no comparable process solely because she is classified as an arriving alien under INA § 101(a)(13)(C). This inversion, in which lawful status and long-settled family ties yield less process than no status at all, underscores that the detention scheme as applied to Petitioner is untethered from any legitimate governmental interest and violates due process.

**CLAIM TWO: Prolonged Detention Without Adequate Justification**

43. Petitioner realleges and incorporates by reference each of the foregoing paragraphs.

44. Where the mandatory detention of a lawful permanent resident becomes unreasonable or unjustified, due process requires an individualized inquiry into flight risk and dangerousness. Demore v. Kim, 538 U.S. 510, 532 (2003)

(Kennedy, J., concurring). This concern applies with particular force to Petitioner, whose lawful permanent resident status distinguishes her detention from that of a noncitizen with no comparable history or ties to the United States.

45. Because she is classified as an "arriving alien," Petitioner faces prolonged detention. The nature of Petitioner's detention, absent any individualized showing that continued custody is justified, renders her detention unreasonable and violative of due process. Cf. Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (due process requires that civil detention bear a reasonable relation to its purpose).

**CLAIM THREE: Petitioner's Classification as an Alien "Seeking Admission" Lacks an Adequate Evidentiary Basis and Violates the Fifth Amendment and the INA**

46. Petitioner realleges and incorporates by reference each of the foregoing paragraphs.

47. Under INA § 101(a)(13)(C), a returning lawful permanent resident "shall not be regarded as seeking an admission" unless the government establishes that one of six enumerated exceptions applies. The Board of Immigration Appeals has held that the government bears the burden of establishing, by clear and convincing evidence, that a returning LPR falls within one of these exceptions. Matter of Rivens, 25 I&N Dec. 623, 625 (BIA 2011); Matter of Valenzuela-Felix, 26 I&N

Dec. 53 (BIA 2012); see also Matter of Pena, 26 I&N Dec. 613 (BIA 2015) (a returning lawful permanent resident cannot be regarded as seeking admission, and may not be charged with inadmissibility under INA § 212(a), unless one of the section 101(a)(13)(C) exceptions applies). The Ninth Circuit has adopted this framework and applies the clear-and-convincing standard to the government's showing that a returning lawful permanent resident falls within a section 101(a)(13)(C) exception. Vazquez Romero v. Garland, 999 F.3d 656 (9th Cir. 2021).

48. Petitioner acknowledges that in Blanche v. Lau, 609 U.S. ___, No. 25-429 (June 23, 2026), a divided Supreme Court held that the INA does not require a border officer to have clear and convincing evidence that a returning lawful permanent resident has committed a crime involving moral turpitude before treating that resident as an applicant for admission at the port of entry. Writing for the six-Justice majority, Justice Thomas reasoned that the statute imposes no such burden on officers making "quick judgments on the spot," and that the government may rely on later-acquired evidence, including a post-entry conviction, to sustain the classification at the subsequent removal hearing. Id., slip op. at 7 (quoting Luz Munoz v. Holder, 755 F.3d 366, 371 (5th Cir. 2014)). Two limits on that holding matter here. First, the Court addressed only the officer's initial determination at the border; it did not purport to relieve the government of the burden it bears in

removal proceedings, under Rivens, Valenzuela-Felix, and Vazquez Romero, to establish by clear and convincing evidence that the resident falls within a section 101(a)(13)(C) exception. Second, the Court expressly declined to decide whether the government bears any burden at all to establish that a returning resident is seeking admission, and, if so, what lesser standard of proof, if any, applies at the time of the border encounter, and did not address the constitutional adequacy of the process afforded to a resident who is detained on the strength of that initial determination. Id., slip op. at 7 n.2.

49. Respondents' own prior conduct undermines any contention that the clear-and-convincing standard is satisfied here. On multiple occasions after the 2008 and 2014 convictions DHS alleges, Petitioner presented herself for inspection at a United States port of entry and was readmitted as a returning lawful permanent resident. On each of those occasions, the same alleged convictions now relied upon were, on DHS's own theory, a matter of record available to the inspecting officers, and DHS did not treat Petitioner as seeking admission. Most recently, in March 2026, only months before the border encounter at issue, Petitioner's Permanent Resident Card was renewed, reaffirming her lawful permanent resident status with the same alleged convictions already in DHS's records. Where the agency has repeatedly examined a lawful permanent resident's record and readmitted her without charge, treating that same record as a basis for arriving-alien classification

and mandatory detention years later, with no new conduct, is difficult to reconcile with the clear-and-convincing burden the agency bears. It should be noted that even the Respondent in the Lau matter was paroled into the United States pending resolution of his removal proceedings, while Petitioner in this matter was immediately detained with no process afforded to her.

50. Respondents' burden under Rivens and Valenzuela-Felix is not satisfied by pointing to the alleged 2008 and 2014 convictions in the abstract. To invoke the INA § 101(a)(13)(C)(v) exception, Respondents must establish, by clear and convincing evidence, that Petitioner "has committed an offense identified in section 212(a)(2)." Respondents must first establish the existence of any conviction on which they rely through the records the statute and regulations require. Whether a prior conviction is such an offense is, in turn, a legal determination that depends on the elements of the statute of conviction and, where necessary, on the reliable record of conviction. See INA § 240(c)(3)(B), 8 U.S.C. § 1229a(c)(3)(B); 8 C.F.R. § 1003.41. An allegation of a conviction does not establish the conviction, and the existence of a conviction, standing alone, does not establish that it qualifies. To Petitioner's knowledge, Respondents have not produced certified records of conviction or any other reliable record establishing either alleged conviction or the elements of either offense, and have made no individualized showing that either alleged conviction is an offense identified in INA § 212(a)(2).

51. Respondents' burden extends to each conviction they allege, and it includes establishing that no exception to inadmissibility under INA § 212(a)(2)(A)(ii) applies. That requirement has particular force here. To the extent Respondents rely on the 2008 case under California Penal Code § 470(d), even if that case was charged and resolved as a misdemeanor as alleged by DHS, with summary probation and no term of imprisonment imposed, these factors would bear directly on the petty offense exception at INA § 212(a)(2)(A)(ii)(II). Because that exception turns on whether the noncitizen has committed only one crime involving moral turpitude, see Matter of Garcia-Hernandez, 23 I&N Dec. 590 (BIA 2003), Respondents cannot defeat it as to the 2008 case merely by invoking the alleged 2014 conviction assertion. They must instead establish, on a proper record and by clear and convincing evidence, that the alleged 2014 conviction exists and is itself a qualifying offense. Respondents have made no such showing as to either alleged conviction, and the burden to make it rests with Respondents, not Petitioner.

52. Absent an individualized determination, on a proper record, that the convictions Respondents allege exist and are offenses identified in INA § 212(a)(2) and that no exception to inadmissibility under INA § 212(a)(2)(A)(ii) applies, Respondents cannot meet their burden of establishing by clear and convincing evidence that Petitioner falls within the INA § 101(a)(13)(C)(v) exception.

Petitioner has therefore been improperly classified as an applicant for admission and improperly subjected to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) on that erroneous basis.

53. Nothing in this petition constitutes a concession that Petitioner was convicted of either offense DHS alleges, or that either alleged conviction is a crime involving moral turpitude or an offense identified in INA § 212(a)(2), or that Petitioner is removable as charged. Petitioner expressly reserves all arguments regarding the existence and classification of those alleged convictions, her removability, and her eligibility for any form of relief or protection, for resolution in her removal proceedings. The claims presented here concern only the lawfulness of Petitioner's detention and the adequacy of the evidentiary basis on which Respondents have acted.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Order Respondents to show cause why the writ should not be granted;

C. Order Petitioner's immediate release pending resolution of her removal proceedings, or in the alternative, release on reasonable conditions;

D. Order Respondents to provide Petitioner with an individualized bond hearing before an immigration judge, at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community, and, in the alternative, that Petitioner is properly classified as an arriving alien subject to mandatory detention;

E. Award Petitioner her costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

F. Grant such other and further relief as this Court deems just and proper.

Dated: 9/29/2026

Respectfully submitted,

Randy M. Rodriguez, Esq.
LAW OFFICE OF RANDY RODRIGUEZ
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Barbara Perez De Algutria, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: September 29, 2026.

Randy M. Rodriguez, Esq.
Attorney for Petitioner